# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|                                      |   |                                      |
|--------------------------------------|---|--------------------------------------|
| BRIDGES PUBLIC CHARTER SCHOOL,       ) |   |                                      |
|                                      ) |   |                                      |
| Plaintiff,                          ) |   |                                      |
|                                      ) |   |                                      |
| v.                                   ) |   | Civil Action No. 10-cv-00108 (ABJ)   |
|                                      ) |   |                                      |
| FATMATA BARRIE, *et al.*,            ) |   |                                      |
|                                      ) |   |                                      |
| Defendants.                          ) |   |                                      |

## MEMORANDUM OPINION

Plaintiff Bridges Public Charter School ("Bridges") brings this action against defendants Fatmata Barrie, Christopher Anwah, and the Law Offices of Christopher N. Anwah, PLLC (collectively, "defendants") seeking $15,994.50 in attorneys' fees under a fee shifting provision of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, *et seq*. Bridges claims it is entitled to attorneys' fees because (1) it was the prevailing party in an administrative proceeding, and (2) defendants initiated and continued to litigate an action that was frivolous, unreasonable, and without foundation. The parties filed cross motions for for summary judgment. The Court will grant plaintiff's motion for summary judgment [#21] and will deny defendants' motions for summary judgment [#22 and #27].

## BACKGROUND

### I. The IDEA Statutory Framework

The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for future education." 20 U.S.C. §

1400(d)(1)(A). To receive funding under the IDEA, school districts must adopt procedures to ensure appropriate educational placement of students with disabilities. *Id*. § 1413. The IDEA's free and appropriate public education ("FAPE") provision entitles each student with a disability to a comprehensive plan, known as an individualized education program ("IEP"), in order to meet their specialized educational needs. *Id*. § 1414(d)(2)(A) ("At the beginning of each school year, each [state] shall have in effect, for each child with a disability in [its] jurisdiction, an individualized education program."). The IEP must be formulated in accordance with the terms of the IDEA and "should be reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 204 (1982). "If no suitable public school is available, the school system must pay the costs of sending the child to an appropriate private school." *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 519 (D.C. Cir. 2005) (citations and alterations omitted).

The IDEA requires that students with disabilities be placed in the "least restrictive setting" appropriate to their needs, allowing them to be educated in an integrated setting with children who do not have disabilities to the maximum extent possible. 20 U.S.C. § 1412(a)(5)(A). The IDEA provides parents of students with disabilities the opportunity to participate in the evaluation and placement process. *Id*. §§ 1414(e), 1415(b)(1). Parents who object to their child's "identification, evaluation, or educational placement" are entitled to an impartial due process hearing, *see id*. §§ 1415(b)(6), (f)(1), at which they have a "right to be accompanied and advised by counsel" and a "right to present evidence and confront, cross-examine, and compel the attendance of witnesses." *Id*. § 1415(h). A qualified impartial hearing officer conducts the due process hearing. *Id*. § 1415(f).

Parents may appeal a hearing officer's findings and decision by bringing a civil action in either state or federal court. *Id*. § 1415(i)(2)(A). The district court has remedial authority under the IDEA and broad discretion to grant "such relief as the court determines is appropriate." *Id*. § 1415(i)(2)(C)(iii). Moreover, the IDEA gives the Court discretion to award reasonable attorneys' fees to a prevailing party who is the parent of a child with a disability in an action under the IDEA. *Id*. § 1415(i)(3)(B)(i)(I). This includes the authority to award fees to a party who has prevailed in an administrative due process hearing. *See Moore v. District of Columbia*, 907 F.2d 165, 166 (D.C. Cir. 1990).

## II. Factual Background

Defendants Barrie and Anwah are attorneys licensed to practice in the District of Columbia and were employed, at relevant times, by defendant The Law Offices of Christopher N. Anwah, PLLC. Compl. ¶¶ 4–6. In July 2009, Barrie and Anwah represented C.R., a minor child with a disability, and her mother in an administrative hearing against Bridges, a public charter school in the District of Columbia. *Id*. ¶¶ 4–5.

C.R. attended the pre-kindergarten at Bridges during the 2007–2008 and 2008–2009 school years. Administrative Record ("A.R.") at 750, 753. Bridges identified C.R. as a "student eligible to receive special education and related services," which entitled her to receive an IEP developed by a multidisciplinary team ("MDT"). *Id*. C.R.'s mother participated in IEP meetings with the MDT from Bridges on the following dates: January 16, 2008; May 19, 2008; and June 11, 2009. A.R. at 90, 114, 149, 753. C.R.'s mother signed the IEPs that were developed for her child at these meeting. A.R. at 94, 125, 161.

3

### A. The IEP Meetings

At the first IEP meeting on January 16, 2008, the MDT and C.R.'s mother discussed transitioning C.R. from her current placement in a full-time specialized classroom, where she had minimal interaction with non-disabled peers, to an "inclusion classroom setting," which would allow her to interact with non-disabled peers for part of the day. Plaintiff's Statement of Material Facts ("Pl.'s Stmt.") ¶ 6; A.R. at 90, 754.[1]

In March 2008, the MDT re-evaluated C.R. and her progress at Bridges. A.R. at 100–132, 753. The second IEP meeting took place on May 19, 2008, and was attended by the MDT and C.R.'s mother. *Id.* At that meeting, the MDT determined that C.R. should be moved to a general classroom setting and that she only needed to be "pulled out" for specialized instruction two hours per week. A.R. at 100–132, 753. Although defendants dispute that C.R.'s mother disagreed with this determination, the facts in the record (including the notes from the IEP meeting) show that she did not object to the IEP and that she signed the IEP after it was complete. A.R. at 125.

A third IEP meeting was held on June 11, 2009, and was attended by C.R.'s mother and the MDT. A.R. at 149, 167. The notes from the meeting show that the participants again determined that C.R. only needed to be removed from the general education setting for "periods of the school day." A.R. at 149, 167. The participants also developed goals and objectives for C.R.'s IEP. A.R. at 753-54. C.R.'s mother again signed the IEP. A.R. at 161. The meeting notes do not indicate that she raised any objection or contacted Bridges after the meeting to

---

1 Defendants appear to dispute this fact by saying that "[t]he team gave her part time and nothing in the notes shows clearly that the mom agreed to reduction of services." Defendants' Statement of Material Facts ("Defs.' Stmt.") ¶ 6. Although the precise nature of this "dispute" is unclear from defendants' statement of the facts, the Court finds that this fact is immaterial to this litigation and therefore does not need to be resolved.

discuss or revise the goals and objectives in the IEP. A.R. at 755. Because Bridges is a pre-kindergarten school that does not serve students beyond preschool, the participants also discussed how C.R. would need to enroll in another school for kindergarten at the end of the 2008–2009 school year. A.R. at 755. C.R.'s mother also attended kindergarten readiness workshops sponsored by Bridges and enrolled C.R. in a D.C. public school for the 2009–2010 school year, but she withdrew the enrollment before classes started to send her to a private school. *Id*.

### B. The Due Process Complaint

In July 2009, defendant Barrie filed a due process complaint against Bridges on behalf of C.R. and C.R.'s mother. A.R. at 1–5, 750. The complaint raised three claims: (1) that Bridges failed to provide C.R. with an appropriate IEP resulting from the meetings held on May 19, 2008 and June 11, 2009 because the IEPs were not "written and reviewed with the parent as part of the team";[2] (2) that Bridges "failed to convene a placement meeting and provide an appropriate placement" for the 2009–2010 school year; and (3) that Bridges failed to provide C.R. with "appropriate special education services." A.R. at 3. As mandated by the IEP, a resolution meeting was held on August 20, 2009, which was attended by C.R.'s mother and Samar Malik, an advocate employed at defendant the Law Offices of Christopher N. Anwah, PLLC. A.R. at 22. During this meeting, C.R.'s mother and the advocate were given the opportunity to discuss their concerns about the IEP and declined to do so. A.R. at 23–24, 595–96, 598–99, 654–55.

---

2      Specifically, the due process complaint alleged that Bridges did not provide C.R. with an appropriate IEP because the May 18, 2008 and June 11, 2009 IEPs "fail to specify that all of [C.R.]'s specialized instruction should be provided outside the general education environment; rather they provide that [C.R.] should receive two hours of specialized instruction per week in a special education setting and ten hours of specialized instruction in a general education setting." Moreover, the complaint alleges that the least restrictive environment section of the IEPs says that that C.R.'s "instruction must be provided outside the general education setting." A.R. at 750.

5

## C. The Due Process Hearing

A due process hearing was convened on September 29, 2009.[3] At the hearing, C.R.'s mother withdrew some of the claims raised in the original due process complaint. The remaining issues for hearing were: (1) whether Bridges failed to include the parent in the development of the goals and objectives in the May 19, 2008 and June 11, 2009 IEPs; and (2) whether Bridges failed to provide C.R. with an appropriate placement for the 2009–2010 school year. A.R. at 368–77, 752. C.R.'s mother presented two witnesses at the hearing, herself and Meredith Ouellette, a representative from the private school where C.R. was ultimately enrolled. A.R. at 380, 479–80, 762. Bridges presented four witnesses: Alexa Kuuskra, a special education coordinator at Bridges; Rebecca Wissler, a speech-language pathologist at Bridges; Kimberly Brooks, a special education teacher at Bridges; and Jean Tebinka, an audiologist for the District of Columbia Public Schools. A.R. at 574, 642–43, 667–68, 699.

Based on the testimony at the hearing, the hearing officer issued a decision dismissing the complaint with prejudice and finding that C.R.'s mother's claims "had no foundation in fact and were frivolous." A.R. at 757. On the first issue of whether Bridges denied C.R. a FAPE by failing to include her mother in the development of the IEPs, the hearing officer found that the "evidence overwhelmingly established that . . . the May 19, 2008 and June 11, 2009 IEPs were developed with [the parent's] full participation." A.R. at 759. The hearing officer also determined that "the testimony of every witness at the due process hearing belies [her] claims." *Id*. As to the second issue of whether Bridges failed to provide C.R. with an appropriate placement for the 2009–2010 school year, the hearing officer found that Bridges had no obligation under the IDEA to place C.R. in another school for kindergarten. *Id*. According to

---

3   Defendant Anwah filed his appearance on behalf of C.R. and her mother shortly before the due process hearing. A.R. at 238, 239.

the hearing officer, C.R.'s mother "was fully aware at the time she enrolled [C.R.] in the charter pre-kindergarten school that [C.R.] would age out . . . and enter elementary school after completing two years of pre-kindergarten" and that she knew "the process for enrolling the student in elementary school." *Id*. Defendants did not appeal the hearing officer's decision.

Bridges filed this action on January 20, 2010, seeking an award of attorneys' fees in the amount of $15,994.50 under the IDEA's fee-shifting provision. *See* Compl. at 8. Count I alleges that defendants' filing of the due process complaint on behalf of C.R. and her mother was frivolous, unreasonable, and without foundation. *Id*. at 8–9. Count II alleges that defendants continued to litigate the due process complaint after it had become frivolous, unreasonable, and without foundation. *Id*. at 9. The Court denied defendants' motion to dismiss on May 6, 2010. *Bridges Pub. Charter Sch. v. Barrie, et al.*, 709 F. Supp. 2d 94, 99 (D.D.C. 2010). The parties' cross-motions for summary judgment are now pending before the Court.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing there is a genuine issue for trial." *Id*. at 324 (internal quotation marks omitted). The existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

7

242, 248 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is only "material" if it is capable of affecting the outcome of the litigation. *Id*. *See also Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).

"The rule governing cross-motions for summary judgment . . . is that neither party waives the right to a full trial on the merits by filing its own motion; each side concedes that no material facts are at issue only for the purposes of its own motion." *Sherwood v. Washington Post*, 871 F.2d 1144, 1148 n.4 (D.C. Cir. 1989), quoting *McKenzie v. Sawyer*, 684 F.2d 62, 68 n.3 (D.C. Cir. 1982). In assessing each party's motion, "[a]ll underlying facts and inferences are analyzed in the light most favorable to the non-moving party." *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010), citing *Anderson*, 477 U.S. at 247.

## ANALYSIS

When a local education agency is the prevailing party in an administrative action under the IDEA, the Court has discretion to award reasonable attorneys' fees from a parent's attorney "who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation," or "who continued to litigate after the litigation became frivolous, unreasonable, or without foundation . . . ." 20 U.S.C. § 1415(i)(3)(B)(i)(II). The parties' cross-motions for summary judgment present three issues: (1) whether plaintiff Bridges is a "prevailing party" in the administrative proceedings; (2) whether defendants filed or continued to litigate a complaint that was frivolous, unreasonable, or without foundation; and (3) whether the attorneys' fees that plaintiff seeks are reasonable.

**I.  Bridges is a Prevailing Party.**

In determining whether plaintiff is a "prevailing party" under the IDEA, the Court applies a three-part test developed by the D.C. Circuit: "(1) there must be a 'court-ordered change in the

legal relationship' of the parties; (2) the judgment must be in favor of the party seeking the fees; and (3) the judicial pronouncement must be accompanied by judicial relief." *District of Columbia v. Straus*, 590 F.3d 898, 901 (D.C. Cir. 2010), quoting *Thomas v. Nat'l Sci. Found.*, 330 F.4d 486, 492–93 (D.C. Cir. 2003). When applying this test to fee requests by defendants, the D.C. Circuit has advised that only the latter two requirements must be satisfied. *Id*. ("Although we have developed this test in connection with requests for fees by plaintiffs, we have applied the latter two requirements to requests by defendants as well."); *see also District of Columbia v. Nahass*, 699 F. Supp. 2d 175, 182 (D.D.C. 2010) ("[W]here a defendant is seeking to establish 'prevailing party' status, that party need not establish a court-ordered change in the legal relationship of the parties.") Moreover, courts in this district have held that a hearing officer's dismissal on the merits of a due process complaint that has not been appealed warrants a finding that a local education agency is a prevailing party. *See, e.g., District of Columbia v. West*, 699 F. Supp. 2d 273 (D.D.C. 2010).

Defendants argue that the doctrine of stare decisis does not compel this Court to follow the reasoning set forth in *West*. Def. Anwah's Opp. to Pl.'s Mot. Summ. J. ("Defs. Anwah's Opp.") at 9–11. While this is true, the Court is persuaded by the sound reasoning set forth in *West*. Moreover, this Court is obligated to apply the test developed by the D.C. Circuit in *Straus*. Under the *Straus* test, it is clear that Bridges was the prevailing party in the administrative proceeding. On October 8, 2009, the hearing officer dismissed the complaint filed by defendants with prejudice and on the merits. A.R. at 757. This decision satisfies the second and third prongs of the *Straus* test because the judgment was in favor of Bridges and Bridges was granted judicial relief. *Id*.

9

## II. Defendants Filed and Continued To Litigate A Complaint That Was Frivolous, Unreasonable, and Without Foundation.

The Court must next determine whether the defendants filed or continued to litigate a complaint that was "frivolous, unreasonable, or without foundation." 20 U.S.C. § 1415(i)(3)(B)(i)(II).[4] "In making this determination, 'a district court must focus on the question whether the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful.'" *West*, 699 F. Supp. 2d at 279, quoting *Sullivan v. Sch. Bd. of Pinelas County*, 773 F.2d 1182, 1189 (11th Cir. 1985).

The Court will first address whether the three claims in the due process complaint were "frivolous, unreasonable, or without foundation" when filed. The first claim in the complaint alleges that Bridges failed to develop an appropriate IEP from the meetings held on May 19, 2008 and June 11, 2009 because it did not consult C.R.'s mother about the IEP. A.R. at 1–3. The undisputed facts show that C.R.'s mother was present for and participated in the meetings with the MDT, signed the IEPs, and never contacted Bridges to object to any provision of the IEP. A.R. at 125, 161. Moreover, as described by the hearing officer, the testimony at the due process hearing "overwhelmingly established" that the goals were discussed with C.R.'s mother at the May 19, 2008 and June 11, 2009 meetings. A.R. at 759; Pl.'s Stmt. ¶¶ 38, 39. Defendants do not dispute this. *See* Def. Stmt. ¶ 38. Instead, they contest in what level of detail the goals were discussed with C.R.'s mother. *Id*. Because defendants had no factual basis for claiming that Bridges did not consult C.R.'s mother about the IEPs, the Court finds that this claim was without merit.

---

4     The Court notes that Bridges does not need to prove that all of the claims made in the due process complaint were frivolous to merit an award of attorneys' fees. *Andrade v. Jamestown Housing Auth.*, 82 F.3d 1179 (1st Cir. 1996) (awarding attorneys' fees even though only two of three claims were determined frivolous).

The second claim in the due process complaint is that Bridges failed to convene a placement meeting and provide an appropriate kindergarten placement for C.R. after she transitioned out of the pre-kindergarten program at Bridges. A.R. at 3.[5] Defendants allege that C.R.'s mother asked for a discussion of kindergarten placement but that Bridges refused to discuss it with her. *Id.* But several witnesses at the administrative hearing testified not only that C.R.'s mother was fully aware of the process for enrolling C.R. in kindergarten from attending the kindergarten readiness workshops but also that the process was specifically discussed at the June 11, 2009 IEP meeting. A.R. at 439–440, 452–54, 489, 510–11, 586, 588–92, 655–56, 754. According to defendants, the IEP meeting did not qualify as a placement meeting because "the mother testified that they gave information [sic] all parent [sic] but believed that a placement meeting was to be held and the IDEIA does not require the parent to look for a school placement for their special education child." Def. Stmt. ¶ 41. Even if this is true – and plaintiff claims it is not – the parties do not dispute that the transition to kindergarten was discussed at the June 11, 2009 meeting. Again, it appears that the dispute concerns the level of detail in which this topic was discussed. Thus, the Court finds defendant had no grounds for the claim that Bridges failed to convene a placement meeting.

The final claim in the due process complaint is that Bridges failed to provide C.R. with appropriate special education services for the two years she was enrolled at Bridges. A.R. at 3. The IEPs indicate that C.R. received regular consultation with an audiologist as well as specialized instruction outside of the general classroom setting as was appropriate for her needs. A.R. at 753–54. Defendants fail to identify which particular services C.R. required to receive a

---

5    As Bridges points out, defendants "fail to cite any legal authority for their position that Bridges had the authority or obligation to place C.R. in another [school] once she aged out of Bridges' pre-kindergarten program." Pl.'s Mem. at 16.

FAPE but did not receive. Nor does the record indicate that C.R.'s mother ever raised concerns about the level or type of services provided for her daughter.

Having determined that the complaint was frivolous, unreasonable, and without foundation when defendants filed it, the second basis for an award of attorneys' fees – whether defendants continued to litigate after the litigation became frivolous – is also met here. Defendants did not point to anything in the record that suggests that the complaint became less frivolous as the litigation proceeded. If anything, the litigation became more frivolous as the case went on. First, perhaps recognizing that there was no factual basis for some of the claims asserted in the original complaint, C.R.'s mother and defendants withdrew several claims before the due process hearing began. A.R. at 752. Second, as this Court observed in denying defendants' motion to dismiss, Bridges offered C.R.'s mother the opportunity to review the IEP goals at the resolution meeting but she declined to participate. *Barrie,* 709 F. Supp. 2d at 99. Had she participated in that meeting, she may have "become aware of facts that would have led her to withdraw the entire due process complaint." *Id*. Thus, because this claim is "so lacking in arguable merit as to be groundless or without foundation," *West*, 699 F. Supp. 2d at 279, the Court finds it was unreasonable for defendant to continue litigation.

## III.    The Requested Attorneys' Fees Are Reasonable.

The IDEA gives this Court authority to award attorneys' fees to the prevailing party of an administrative proceeding. 20 U.S.C. §1415(i)(3)(B)(i)(I). Courts typically determine the reasonableness of attorneys' fees based on the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The plaintiff bears the burden of establishing both the reasonableness of the hourly rate and the reasonableness of the number of hours spent on a particular task. *In re North*, 59 F.3d

184, 189 (D.C. Cir. 1995). To show the reasonableness of the hourly rates, plaintiff "must submit evidence on at least three fronts: 'the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community.'" *Jackson v. District of Columbia*, 696 F. Supp. 2d 97, 101 (D.D.C. 2010), quoting *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995). To show the reasonableness of hours spent on a task, plaintiff may submit an "invoice that is sufficiently detailed to 'permit the District Court to make an independent determination whether or not the hours claimed are justified.'" *Holbrook v. District of Columbia*, 305 F. Supp. 2d 41, 45 (D.D.C. 2004), quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Defense,* 675 F.2d 1319, 1327 (D.C. Cir. 1982).

### A. The Hourly Rates

#### a. The prevailing market rate

The IDEA provides that the hourly rates "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). Plaintiff contends that the *Laffey* Matrix rates should apply to demonstrate the prevailing market rates for legal fees incurred in connection with IDEA administrative proceedings. Def. Anwah's Opp. at 7.[6] Defendants argue, without explanation, that the DCPS Guidelines apply to a request for IDEA fees. *Id*. Defendants have taken a contrary position in other fee litigation. *See, e.g., Gray v. District of Columbia*, ---F. Supp. 2d --, 2011 WL 1561553, at *8 (D.D.C. 2011), quoting a pleading filed by defendants that called the DCPS Guidelines "slave labor rates." But "numerous judges in this district have applied *Laffey* rates in the context of fee awards arising out of IDEA administrative proceedings." *Jackson*, 696 F. Supp. 2d at 102 (collecting cases). Therefore, the Court, as it has before, will join other

---

6   The *Laffey* Matrix is "a schedule of charges based on years of experience." *Covington,* 57 F.3d at 1105.

judges in this district by applying the *Laffey* Matrix as the benchmark for prevailing market rates in this case.

        b.      *Attorneys' skill, experience, and reputation*

While the *Laffey* Matrix may demonstrate the prevailing market rate, plaintiff must also demonstrate each attorney's skill, experience, and reputation to show the reasonableness of the fees. *Id*. at 101. Plaintiff submitted an affidavit describing the bar membership, level of experience, and educational background of the two attorneys – Ellen Dalton and Lauren Baum – who billed time on this matter. *See* Dalton Decl. and Baum Decl. Ellen Dalton has been practicing law for 25 years and is licensed in West Virginia, Virginia, and the District of Columbia. Dalton Decl. ¶¶ 1–2. As a partner with the law firm Dalton & Dalton, she has provided legal advice and represented public charter schools at administrative due process hearings under the IDEA. *Id*. Lauren Baum (formerly Lauren Kasprzak) has been practicing law for two years. Baum Decl. ¶¶ 1–2. She is licensed with the Maryland and District of Columbia bars. *Id*. She was an associate at Dalton & Dalton and assisted Ellen Dalton in her representation of Bridges in the underlying administrative action. *Id*.

        c.      *The applicable rate*

Plaintiff seeks an hourly rate of $325.00 for Ellen Dalton. For an attorney with over 20 years' experience who performed work from 2009–2010, the *Laffey* Matrix sets a rate of $465 per hour. Plaintiff seeks an hourly rate of $180.00 for Lauren Baum. For an attorney with between one to three years' experience who performed work between 2009–2010, the *Laffey* Matrix sets a rate of $225 per hour. Because the requested rates for both attorneys are below the rates established by the *Laffey* Matrix, the Court finds that they are reasonable.

The bill submitted by plaintiff also included entries from a paralegal or administrative assistant with the initials "JBM" at a rate of $95.00 per hour. Plaintiff did not include any further information about this timekeeper.

### B. The Hours Expended

Plaintiff also bears the burden of establishing the reasonableness of the number of hours spent on particular tasks. *Alfonso v. District of Columbia*, 646 F. Supp. 2d 1, 4 (D.D.C. 2006). "Hours that are not reasonably expended must be excluded from a fee calculation." *Lopez v. District of Columbia*, 383 F. Supp. 2d 18, 24 (D.D.C. 2005) (internal quotation marks and citation omitted). Defendants argue that plaintiff failed to meet its burden because the charges are for non-professional work or the number of hours expended is unreasonable. The Court disagrees.

#### 1. *Non-professional work*

Defendants first argue that plaintiff improperly charged for various tasks that are "clerical activities." Def. Anwah's Opp. at 8. Activities that are purely "clerical in nature" cannot be included in attorneys' fees because they are considered part of normal administrative overhead. *Jackson*, 603 F. Supp. 2d at 98, citing *Michigan v. EPA*, 254 F.3d 1087, 1095–96 (D.C. Cir. 2001).

The Court has reviewed the bill submitted by plaintiff and finds that any clerical work, such as entries saying "update case file" and "organize case documents," was billed by the paralegal or administrative assistant with the initials "JBM." *See* Ex. 1 to Pl.'s Mem. The Court will exclude these types of purely clerical tasks. *See Jackson*, 603 F. Supp. 2d at 98 (excluding fees for work described as "create file; made copies; faxed document."); *see also Dickens v. Friendship-Edison P.C.S.*, 724 F. Supp. 2d 113, 124 (D.D.C. 2010) (excluding fees for "filing

pleadings"). Because all of the entries billed by Ms. Dalton and Ms. Baum concern substantive legal work such as "prepare for status conference hearing" and "draft answer to due process complaint," the Court will allow reimbursement for these costs. *See* Ex. 1 to Pl.'s Mem.

        2.     *Amount of Time*

Defendants argue that the amount of time billed by plaintiff's attorneys was excessive. Def. Anwah's Opp. at 8. In particular, defendants object to two entries on August 5, 2009 and September 4, 2009 where plaintiff's attorney billed a total of two hours for a telephone conference. *Id*. The Court agrees with plaintiff that "to suggest that an hour long telephone call with a witness in preparation for a due process hearing is excessive is preposterous." Pl.'s Reply at 16. Finally, defendants challenge several of the entries as "block-billing." Block-billing refers to a single time entry that lists multiple tasks, thus making it impossible to evaluate each task's reasonableness. *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004). Although defendants do not specify which entries they consider to be inappropriately block-billed, the Court is satisfied with the level of detail provided in the entries and finds that plaintiff's attorneys expended a reasonable amount of time in this matter. *See, e.g.,* Ex. 1 to Pl.'s Mem. at 18. ("Draft and file motion to prohibit introduction of petitioner's Exhibit 15 on the grounds that it was not filed timely. Review email from [petitioner] requesting that status conference be recorded and reply from hearing officer.")

**C.**    **Summary of Fees**

The Court will award $14,950.00 for work performed by Ms. Dalton and $522.00 for work performed by Ms. Baum. The Court will exclude the $522.50 for administrative work performed by the paralegal or administrative assistant, "JBM". The total amount of fees owed to plaintiff is $15,472.00.

As in her motion to dismiss, defendant Barrie argues here that she cannot be liable for attorneys' fees resulting from defendants' continued litigation of the complaint because she left the law firm one month before the due process hearing occurred. The parties are directed to submit briefing by August 1, 2011, on the issue of whether and how the judgment should be apportioned between the three defendants.

## CONCLUSION

For the reasons stated above, the Court will grant plaintiff's motion for summary judgment [#21] and will deny defendants' motions for summary judgment [#22 and #27]. The Court will award plaintiff $15,472.00 in attorneys' fees but will reserve judgment as to how these fees will be allocated between the three defendants. A separate order will issue.

*[signature: Amy B. Jackson]*

AMY BERMAN JACKSON
United States District Judge

DATE: July 11, 2011